# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 3, 2020

No. 19-20877

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

     Plaintiff - Appellee

v.

RENE FEDERICO REYNOSO-ESCUADRA,

     Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CR-617-1

Before STEWART, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM:*

Rene Federico Reynoso-Escuadra pleaded guilty to one count of illegal re-entry and was sentenced to a statutory maximum twenty-four month term of imprisonment. He appeals his sentence as substantively unreasonable, arguing that the district court relied too heavily on his prior deportations that did not result in criminal prosecutions and on his prior arrests that did not result in criminal convictions. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-20877

## I. Background

Reynoso-Escuadra, a Mexican citizen, was first removed from the United States for being in the country without lawful immigration status on February 18, 2005. He was subsequently removed seven more times, with his most recent deportation occurring on September 30, 2018.

In June 2019, Reynoso-Escuadra was stopped while driving a vehicle in Fort Bend County, Texas. Based on the fact that he had been previously removed and still lacked lawful permission to be in the United States, a grand jury indicted him on one count of illegal re-entry in violation of 8 U.S.C. § 1326(a). Reynoso-Escuadra pleaded guilty to the single-count indictment.

The Presentence Investigation Report ("PSR") relied on the United States Sentencing Commission's 2018 Guidelines Manual to calculate Reynoso-Escuadra's applicable guidelines range. The PSR calculated a total offense level of six: a base level of eight with two points deducted for acceptance of responsibility. The PSR then detailed Reynoso-Escuadra's previous convictions, which included: (1) a 2003 conviction for being under the influence of a controlled substance; (2) a 2003 conviction for taking a vehicle without the owner's consent; (3) a 2004 conviction for obstructing a public officer; (4) a 2011 conviction for "corporal injury" to a spouse or cohabitant; and (5) a 2011 conviction for unlawfully using a firearm, being under the influence of a controlled substance with a firearm, and driving with a suspended or revoked driver's license. Based on these convictions, the PSR calculated Reynoso-Escuadra's criminal history score as four, which put him in criminal history category III for guidelines purposes. With a total offense level of six and a criminal history category of III, the PSR computed the applicable guidelines range as two to eight months of imprisonment.

The PSR then went on to describe "other criminal conduct" and "other arrests," historical information that did not factor into Reynoso-Escuadra's guidelines range but that the district court might find important for sentencing purposes. The "other criminal conduct" section listed and briefly described the circumstances leading to Reynoso-Escuadra's eight prior removals. It also described the circumstances that led to his June 2019 arrest in Fort Bend County. The "other arrests" section then listed a number of arrests that did not lead to criminal convictions. This included: (1) a 2002 arrest for being under the influence of a controlled substance; (2) a 2002 arrest for failure to appear; (3) a 2003 arrest for a litany of charges, including possessing and being under the influence of a controlled substance; (4) a 2003 arrest for trespassing; (5) a 2004 arrest for being under the influence of a controlled substance; (6) another 2004 arrest for being under the influence of a controlled substance, in addition to a charge of contributing to the delinquency of a minor; and (7) a 2010 arrest for being under the influence of a controlled substance.[1]

The PSR noted that the court could "consider an upward departure" from the applicable guidelines range because Reynoso-Escuadra's criminal history score failed to account for his eight prior removals that did not result in criminal prosecution. *See* U.S.S.G. § 4A1.3(a) (setting forth the situations when a district court may depart upward based on the inadequacy of a defendant's criminal history category). Nevertheless, the PSR did not identify any sentencing factor under 18 U.S.C. § 3553(a) that would warrant a sentence outside of Reynoso-Escuadra's applicable guidelines range. Reynoso-Escuadra did not object to the PSR.

---

[1] It is unclear from the PSR whether there is any overlap between the conduct underlying these arrests and the conduct that ultimately led to the convictions.

No. 19-20877

At the sentencing hearing, Reynoso-Escuadra requested a within-guidelines sentence. His attorney emphasized that Reynoso-Escuadra held a position of trust distributing commissary at the jail in which he was being held; that he took Bible study courses "to better his life and better his living"; that this was "his first federal immigration case"; that he had a home in Mexico to return to; and that he had persuaded the mother of his then 10-year-old U.S. citizen son to let the child travel to Mexico to visit Reynoso-Escuadra, which would create less of an incentive for Reynoso-Escuadra to re-enter the country without lawful status. The Government noted that an "upward departure is not what we're asking for but certainly at the high end of the guidelines."

The district court then proceeded to "read off [Reynoso-Escuadra's] prior criminal history like [the court does] in every case." The court read aloud the convictions, the "other criminal conduct," which included the prior deportations, and then finally the "other arrests." After the court finished listing the events, it stated:

> As far as I'm concerned, it's a horrendous criminal history. He's learned nothing, absolutely nothing.
>
> The Court determines a guideline sentence does not address or accurately take into consideration the history and characteristics of this Defendant, his repeated crimes, nor his total and gross disregard and respect for the laws of the United States.
>
> This offense represents his ninth Immigration violation, all previous removals being without prosecution. The Court determines an upward variance is appropriate in this case; and the following sentence, I believe, is sufficient but not greater than necessary based upon the history and characteristics of the Defendant, the need to promote respect for the laws of the country, the need for just punishment for criminal behavior, and the need to protect the public

4

under 18 United States Code Section 3553(a). I'm aware that the max right now is two years.

Based upon the findings of the Court, the Defendant is hereby committed to the custody of the Bureau of the Prisons to be imprisoned in the federal penitentiary without parole for a term of 24 months. That's two years.

Upon release from imprisonment, he'll be placed on supervised release for a term of one year.

Within 72 hours of release, he'll report in person to the probation office and that -- this supervised release is the most I can give under the law; but it's an added means of deterrence, although nothing else has stopped him from coming back in eight prior times and thrown out of the country that many times.

In closing, the court added:

And I'm directing now to the Government that if [Reynoso-Escuadra] comes back in for any reason, if he comes back in and he's prosecuted, he comes back in front of me, not any other judge. He comes right back in front of me, not any other judge, if he comes back in because he's already been -- this will be the ninth time he's thrown out of the country.

The court then offered Reynoso-Escuadra an opportunity to object to the sentence. His counsel argued that the sentence was substantively unreasonable because it was three times the high end of his guidelines range, emphasizing that the court erred by focusing too much on his prior re-entries. The court overruled the objection.

On appeal, Reynoso-Escuadra renews the same substantive reasonableness objection he made to the district court. He also argues that the district court placed too much emphasis on his "bare arrest record" when listing

No. 19-20877

his arrests that did not result in criminal convictions just before pronouncing the sentence.[2] We address both arguments.

## II. Standard of Review

We review Reynoso-Escuadra's challenge to the substantive reasonableness of his sentence for abuse of discretion.[3] *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020).

---

[2] The Government points out that our court has treated this type of "bare arrest record" claim as one of *procedural* error instead of *substantive* error. *See United States v. Van Mol*, 799 F. App'x 258, 258 (5th Cir. 2020) (unpublished) ("[The defendant] also contends that the district court erred by considering his bare arrest record. Although he frames this in terms of substantive reasonableness, we have considered this issue in terms of procedural error.") (citing *United States v. Harris*, 702 F.3d 226, 229 (5th Cir. 2012)). But in *United States v. Van Mol*, the court implicitly recognized that this type of challenge could implicate both procedural and substantive issues. *Id.* at 258–59 ("To the extent his argument regarding consideration of the bare arrest record implicates substantive reasonableness, it fails for the same reasons set out above."). And in one case cited by Reynoso-Escuadra, *United States v. Foley*, the court expressly considered this issue as part of a substantive unreasonableness argument. 946 F.3d 681, 685 (5th Cir. 2020) ("Foley argues that the district court imposed a substantively unreasonable sentence because it improperly gave significant weight to the unsubstantiated, bare allegations in the revocation petition concerning his commission of the possession and assault offenses."). Accordingly, we consider this challenge as one to the substantive reasonableness of Reynoso-Escuadra's sentence, just as he has presented it to us.

[3] The Government asks us to consider Reynoso-Escuadra's arguments as two separate issues that require two separate standards of review. It concedes that he preserved his argument that the district court issued a substantively unreasonable sentence by placing too much emphasis on his prior deportations, and it concedes that abuse of discretion is the proper standard of review for that argument. But it contends that he failed to preserve his argument that the court improperly relied on his bare arrest record, and for that reason the Government insists that the claim should be reviewed for plain error. Because we hold that Reynoso-Escuadra cannot overcome even the less deferential abuse of discretion standard, we follow the lead of several prior panels that have applied abuse of discretion review to specific arguments supporting a substantive reasonableness claim that had not clearly been raised before the district court. *See United States v. Holguin-Hernandez*, 955 F.3d 519, 520 n.1 (5th Cir. 2020) ("Arguably some of Holguin-Hernandez's specific arguments were not preserved and are subject to plain error review. However, because Holguin-Hernandez would not prevail even under the less deferential abuse of discretion standard, we do not reach that question here." (citation omitted)); *United States v. Loucious*, 803 F. App'x 798, 798 n.1 (5th Cir. 2020) (unpublished) ("Although an argument can be made for plain error review given the particular arguments raised on appeal, because Loucious cannot prevail under either standard of review, we apply the less deferential standard.").

### III. Discussion

We review the substantive reasonableness of Reynoso-Escuadra's sentence considering the totality of circumstances. *Gall v. United States*, 552 U.S. 38, 51 (2007). We do not presume his sentence was unreasonable just because it was three times the high end of his applicable guidelines range. *See id.* Although we may consider the extent of the district court's deviation from the guidelines range, we also must give "due deference" to the court's decision that, after having considered the sentencing factors in 18 U.S.C. § 3553(a), an upward variance was justified. *Id.* "The fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.*

Generally, a non-guidelines sentence may be considered substantively unreasonable when it can be shown that the district court either: (1) failed to account for a § 3553(a) factor that should have received significant weight; (2) gave significant weight to an irrelevant or improper factor; or (3) made a clear error of judgment in balancing the sentencing factors. *United States v. Fraga*, 704 F.3d 432, 440 (5th Cir. 2013). Here, Reynoso-Escuadra argues that all three errors occurred.

He first contends that the court's twenty-four month sentence failed to sufficiently account for his applicable guidelines range of two to eight months, and that the applicable guidelines range is a factor under § 3553(a)(4) that should have received significant weight. He next argues that the court erred by giving significant weight to two factors that were irrelevant or improper: the prior deportations and the bare arrest records. Finally, he avers that, considered together, these mistakes represent a clear error of judgment by the district court in applying the § 3553(a) sentencing factors.

No. 19-20877

More specifically, Reynoso-Escuadra argues that the prior deportations received too much weight for several reasons. First, although he technically has been removed eight times, the removals came over a roughly thirteen-year period. Second, three of those removals happened within weeks of each other, so they should really be considered one elongated and continually thwarted attempt to enter and remain in the country without status. Third, because the illegal re-entry guidelines under U.S.S.G. § 2L1.2(b)(1) were amended in 2016 to call for the application of an enhancement only for re-entry *convictions*, the district court improperly over-stepped the decision of the Sentencing Commission by giving unprosecuted re-entries more weight in its decision. *See* U.S.S.G., App. C, Amendment 802 (effective Nov. 1, 2016).

These arguments do not convince us that the district court abused its discretion in relying on Reynoso-Escuadra's prior unprosecuted removals when sentencing him. Notwithstanding the 2016 guidelines amendment, nothing prohibits district courts from considering a defendant's prior unprosecuted deportations when issuing a sentence in an illegal re-entry case. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); *see also United States v. Rodriguez-Prieto*, 794 F. App'x 434, 435 (5th Cir. 2020) (unpublished) (recognizing that it was appropriate for the district court to consider that the defendant had twice been deported when analyzing the defendant's history and characteristics under 18 U.S.C. § 3553(a)(1)); *accord United States v. Caballero-Anaya*, 807 F. App'x 837, 844–45 (10th Cir. 2020) (unpublished) (affirming as substantively reasonable an upward variance that depended on, among other things, "eight prior removals"). The district court did not abuse its discretion in placing

8

significant weight on Reynoso-Escuadra's prior removals even though they occurred over more than a decade and did not result in criminal prosecution.

Additionally, the fact that the court mentioned Reynoso-Escuadra's bare arrest record before pronouncing the sentence does not mean the district court abused its discretion. It's true that district courts cannot rely on bare arrest records to justify varying from a defendant's guidelines range. *United States v. Johnson*, 648 F.3d 273, 278 (5th Cir. 2011) ("[F]or a non-Guidelines sentence, just as for a Guidelines sentence, it is error for a district court to consider a defendant's 'bare arrest record' at sentencing."). But the record is, at best, ambiguous as to whether the district court considered the unadjudicated arrests in determining Reynoso-Escuadra's sentence.

The court mentioned the arrests only *after* listing several crimes for which Reynoso-Escuadra did receive convictions. And even though the court summarized Reynoso-Escuadra's past as "a horrendous criminal history," the description likely encompassed his actual convictions and his prior deportations, all of which were discussed by the court in the same breath as the bare arrest records. Most importantly, the court twice emphasized that the conduct underlying his conviction represented Reynoso-Escuadra's "ninth [i]mmigration violation," which contributed to the court's reasonable belief that Reynoso-Escuadra had a "total and gross disregard and respect for the laws of the United States."

Because the record shows that it was Reynoso-Escuadra's immigration history that most troubled the district court, the district court did not abuse its discretion. *See United States v. Bosley*, 365 F. App'x 599, 600 (5th Cir. 2010) (unpublished) ("As there is no indication that the mere mention of Bosley's unadjudicated prior arrests had any bearing on the district court's decision to deny relief, Bosley has not shown that the district court abused its discretion.").

No. 19-20877

## IV. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.